AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Sep 5, 2024
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Texarkana Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE CELLULAR TELEPHONE AND A NIGHT OWL BRAND VIDEO SECURITY SYSTEM, BOTH OF WHICH ARE PRESENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN THE WESTERN DISTRICT OF ARKANSAS | No. _____4:24-cm-18_____ <br><br> **Filed Under Seal** |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property, *(identify the person or describe property to be searched and give its location)*:
  See "Attachment A"

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*:
  See "Attachment B." **This Court has authority to issue the requested search warrant under Federal Rule of Criminal Procedure 41.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  [x] evidence of a crime;
  [ ] contraband, fruits of crime, or other items illegally possessed;
  [x] property designed for use, intended for use, or used in committing a crime;
  [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to violations, in the Western District of Arkansas, of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm. |
| 18 U.S.C. § 922(o) | Possession of a machinegun. |

The application is based on these facts: *(See attached affidavit of SA Michael Trey Schmitt, FBI)*

  [x]  Continued on the attached sheet.

  [ ]  Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*(Appearing by telephone conference call at 415-527-5035)*
SA Michael Trey Schmitt, Federal Bureau of Investigation, *Affiant*

870-773.2065

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035.

_____
Judge's signature

Date: 9-5-24

City and state: Texarkana, AR               Hon. Barry A. Bryant, United States Magistrate Judge, W. D. Ark.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE CELLULAR TELEPHONE AND A NIGHT OWL BRAND VIDEO SECURITY SYSTEM, BOTH OF WHICH ARE PRESENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN THE WESTERN DISTRICT OF ARKANSAS | CM No. _____<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION**

I, Michael Trey Schmitt, a Special Agent (SA) with the United States Federal Bureau of Investigation (FBI), being duly sworn, depose and state the following is true and correct upon my personal knowledge, investigation, and belief:

**INTRODUCTION**

1. I am a Special Agent with the FBI currently assigned to the Little Rock Division Texarkana Resident Agency office located in Texarkana, Arkansas. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I have been a Special Agent with the FBI since 2021. Prior to that, I worked in collegiate Christian ministry for Campus Crusade for Christ in Lafayette, Louisiana. I attended Texas State University – San Marcos, Texas, and obtained a Bachelor of Science degree in Recreation Administration. I am currently assigned as a Special Agent with the Federal Bureau of Investigation at the Little Rock Division Texarkana Resident Agency. Included in my responsibilities are overseeing and conducting federal investigations relating to violations of Title 18, United States Code, Section 922 (Firearm Offenses), and Title 21 U.S.C. § 841(a)(1), 846,

and 843(b) (Controlled Substance Offenses). I have investigated a multitude of crimes during my tenure as a Special Agent for the FBI and have received specialized training related to the investigation of narcotics and firearms offenses.

3. I make this Affidavit in support of an application for a warrant authorizing the search of the following electronic devices, which are further described and depicted in Attachment A hereto, (hereinafter collectively the "**SUBJECT DEVICES**") for evidence and instrumentalities of violations of Title 18, United States Code, Section 922(o) and Title 18, United States Code, Section 922(g)(1), as further described in Attachment B:

1. a black Apple 'iPhone' cellular telephone (serial number: unknown; International Mobile Equipment Identity (IMEI) number: 351050541009221) (hereinafter individually "**SUBJECT DEVICE 1**"); and

2. a black and gray 'Night Owl' brand video security system (serial number: L94C UUTN XJ30) (hereinafter individually "**SUBJECT DEVICE 2**");

Each of the **SUBJECT DEVICES** is currently in the secure custody of the Federal Bureau of Investigation (FBI) in the Western District of Arkansas.

4. Based on my training and experience, and the facts as set forth in this Affidavit, I have probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and/or 18 U.S.C. § 922(o) (possession of a machinegun) have been committed by Joshua Rigsby, Jr., (hereinafter "RIGSBY") in the Western District of Arkansas. I also have probable cause to search the **SUBJECT DEVICES** described above, and in Attachment A, for evidence and instrumentalities of those violations, as described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction", as defined by Title 18, United States Code, Section 2711. Specifically, the Court is a District Court of the United States that has jurisdiction over the offense(s) being investigated, as defined by Title 18, United States Code, Section 2711(3)(A)(i). Further, the

properties to be searched—the **SUBJECT DEVICES**—are presently located within the Western District of Arkansas.

## PURPOSE OF AFFIDAVIT

6. The information contained in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information outlined within this affidavit is provided for the limited purpose of establishing probable cause to believe that evidence of the listed federal offense will be found within the **SUBJECT DEVICES**. The applied-for search warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data more particularly described in Attachment B.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital

cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP

    addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   g. <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my knowledge, training, and experience, I know that **SUBJECT DEVICE 1** has capabilities which allow it to serve as wireless telephone, digital camera, tablet, means of internet access, IP address, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and how and when it was used.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

9. Based on my knowledge, training, and experience, I know that electronic devices like the **SUBJECT DEVICES** can store information for long periods of time. Similarly, things which have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in this affidavit, but also forensic evidence which establishes how the **SUBJECT DEVICES** were used, the purpose of their use, who used it, and when. There is probable cause to believe this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

   a. Data on the storage medium can provide evidence of a file which was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium is necessary to draw an accurate conclusion in a dynamic process. Electronic evidence is not always data which can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes is necessary to establish that a particular thing is not present on a storage medium.

11. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant. The examination of the **SUBJECT DEVICES** may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

12.     *Manner of execution.* Because this warrant seeks only permission to examine electronic devices which are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion into any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the applied-for search warrant at any time in the day or night.

## PROBABLE CAUSE

13.     On or about April 24, 2024, at approximately 6:50 PM, Texarkana Arkansas Police Department (TAPD) officers responded to a "shots fired" call at 1400 East 35th Street, Apartment 48, in Texarkana, Arkansas (hereinafter "Apartment 48"), which is in the Western District of Arkansas. Upon arrival, TAPD Officers observed what appeared to be blood on the ground outside of Apartment 48. They then conducted a sweep of the interior of Apartment 48, and no victims were found. Apartment 48 was then secured, pending a state search warrant application.

14.     Multiple witnesses stated, in substance, that Joshua Rigsby, Jr., (hereinafter "RIGSBY") had been inside Apartment 48 when certain juveniles, who were also in the apartment, heard multiple gunshots. Witnesses reported that, after the gunshots, RIGSBY wrapped his hand, which was bleeding, and jumped out of one of Apartment 48's bedroom windows.

15.     Based on information supplied by the witnesses, and other evidence found at the scene, TAPD investigators concluded that a video security system operated by the complex (**SUBECT DEVICE 2**) had likely captured video of individuals coming and going from Apartment 48 prior to, and after, the April 24 shooting incident. TAPD investigators observed video cameras from the apartment complex's security system pointed in the direction of Apartment 48 and investigators believed those cameras likely captured traffic in and out of Apartment 48. TAPD investigators asked the manager of the apartment complex to allow them

to view footage captured by **SUBJECT DEVICE 2**. The manager stated she did not know how to access the system.

16.     On April 24, 2024, TAPD investigators obtained a state search warrant authorizing a search of Apartment 48, and the seizure of **SUBJECT DEVICE 2**. That warrant was executed on April 24, 2024. Inside the back right bedroom of Apartment 48, investigators found and seized a Glock model 19 9mm semi-automatic handgun, bearing frame serial number BVGV931 and barrel serial number BUCF591 (hereinafter the "Subject Firearm"). In Apartment 48's living room, investigators also located and seized a Nike backpack holding five plastic baggies containing a total of approximately 133 grams of suspected marijuana. Multiple 9mm ammunition cartridges and spent 9mm cartridge casings were also found and seized from Apartment 48's living room, as was **SUBJECT DEVICE 1**. On the same date, **SUBJECT DEVICE 2** was seized from the complex's front office.

17.     Following their seizure by TAPD on April 24, 2024, the **SUBJECT DEVICES** were each transferred to the custody of the Federal Bureau of Investigation on May 10, 2024. As of the date and time of this warrant application, the SUBJECT DEVICES are physically present within the Western District of Arkansas, in the custody of the FBI's Texarkana Resident Agency.

18.     During this investigation, I have personally inspected the Subject Firearm. Drawing on my training and experience as an FBI Special Agent, I have identified the Subject Firearm as a weapon which will, or is designed to, or may be readily converted to, expel a projectile by the action of an explosive. I also confirmed that the Subject Firearm also includes the frame or receiver of such a weapon. As such, the Subject Firearm is a "firearm" within the meaning of 18 U.S.C. § 921(a)(3). In examining the Subject Firearm, I also observed that it appears to have been modified by the installation of so-called "Glock Switch". From my training and experience, I know that a Glock Switch is a form of 'auto sear' and a part or combination of

parts designed and intended solely and exclusively for use in converting a weapon to shoot, automatically, more than one shot, without manual reloading, by a single function of the trigger. A Glock Switch is therefore, itself, a "machinegun" within the meanings of 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(24), whether installed on a pistol or not, and a "firearm" within the meaning of 26 U.S.C. 5845(a).

19. After its April 24, 2024, seizure, FBI Special Agent Ryan Lathrop conducted an examination of the Subject Firearm. Having received specialized training in investigating and identifying the origins of firearms and ammunition, Special Agent Lathrop determined that the Subject Firearm (not including the above-described "Glock Switch" installed on it) was manufactured in the European nation of Austria, and not in the United States or the state of Arkansas. Therefore, prior to its seizure in the Western District of Arkansas, the Subject Firearm must have been shipped and transported in both interstate and foreign commerce.

20. I have received and reviewed records of the Circuit Court for Little River County, Arkansas, showing that, in August 2020, RIGSBY was convicted in that court of the felony offense of Theft of Property, in violation of A.C.A. § 5-36-103(b)(3)(A). The same records show that RIGSBY was sentenced to 24 months in prison for that offense.

21. After the April 24 shooting incident, I interviewed RIGSBY at the Bowie County, Texas, jail, where RIGSBY was then in custody. After being advised of his *Miranda* rights, RIGSBY waived those rights and agreed to be interviewed. RIGSBY said a juvenile he knew lived at Apartment 48. RIGSBY said the Juvenile had made a Facebook post indicating they were in possession of a firearm. RIGSBY said he was interested in obtaining the firearm, so went to Apartment 48 for that purpose. RIGSBY said he was handling the firearm when it suddenly fired multiple rounds, one or more of which struck his hand. According to RIGSBY, he then wrapped his hand in a cloth, jumped out of Apartment 48's second story window, entered a friend's vehicle,

and was driven to a hospital in Mount Pleasant, Texas (approximately an hour west of Apartment 48) to receive medical care. RIGSBY said he was then transported to Tyler, Texas, for additional medical care, where he was arrested on outstanding warrants. RIGSBY admitted that he knew he was not allowed to possess or be around firearms because of his criminal history.

22. **SUBJECT DEVICE 1** was found in the living room of Apartment 48, in the same general area where multiple 9mm shell casings were also discovered. At the time of its discovery, **SUBJECT DEVICE 1** was powered on, and TAPD officers noted that the background picture on the lock screen of **SUBJECT DEVICE 1** is a photo of RIGSBY and a female child.

23. From my training and experience, I know that Facebook is a social media application that is routinely, if not almost exclusively, accessed by its users via an application on mobile devices like **SUBJECT DEVICE 1**.

24. Since the SUBJECT DEVICES were first seized by TAPD investigators on April 24, 2024, they have remained secured, unaltered, and in the custody of law enforcement. From my training and experience, and my review of relevant TAPD and FBI records, I have probable cause to believe that the **SUBJECT DEVICES** have been stored in such a manner that their contents presently remain in substantially the same state as when they were originally seized.

25. From all of the above, I have probable cause to believe that **SUBJECT DEVICE 1** presently contains evidence tending to show that RIGSBY knowingly traveled to Apartment 48 with the purpose and intent of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and/or 18 U.S.C. § 922(o) (possession of a machinegun). I also have probable cause to believe that **SUBJECT DEVICE 2** contains evidence of RIGSBY's arrival at, and/or departure from, Apartment 48 before and/or after the above-described shooting incident, which is also relevant evidence of his commission of one or more of the above-described offenses.

26. The requested examination of the **SUBJECT DEVICES** may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

27. Based on the above, I respectfully submit that this Affidavit establishes probable cause for the attached search warrant, authorizing the examination of the **SUBJECT DEVICES** described in Attachment A, to seek the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and/or 18 U.S.C. § 922(o) (possession of a machinegun).

Respectfully submitted,

(Appearing by telephone conference call at 415-527-5035)
Special Agent Michael Trey Schmitt    870-773-2005
Federal Bureau of Investigation

Attested to by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035 on this 5th day of September, 2024.

_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF THE SUBJECT DEVICES TO BE SEARCHED

**SUBJECT DEVICE 1** is a black Apple iPhone cellular telephone, bearing an unknown serial number and International Mobile Equipment Identity (IMEI) number: 351050541009221, which was seized from 1400 East 35th Street, Apartment 48, Texarkana, Arkansas, on or about April 24, 2024, and which is presently in the secure custody of the Federal Bureau of Investigation in the Western District of Arkansas. Three photos of **SUBJECT DEVICE 1** follow:





## ATTACHMENT A (Cont'd)
### Page 2 of 2

**SUBJECT DEVICE 2** is a black and gray 'Night Owl' brand video security system, bearing serial number: L94C UUTN XJ30, which was seized from 1400 East 35th Street, Texarkana, Arkansas, on or about April 24, 2024, and which is presently in the secure custody of the Federal Bureau of Investigation in the Western District of Arkansas. Two photos of **SUBJECT DEVICE 2** follow:




## ATTACHMENT B

### DESCRIPTION OF THINGS TO BE SEARCHED FOR AND SEIZED

1. All records, data and information in whatever form found on **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**, as described in Attachment A, which constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and/or 18 U.S.C. § 922(o) (possession of a machinegun) on or about April 24, 2024, in the Western District of Arkansas, including, but not limited to:

   a. As to **SUBJECT DEVICE 1**:

      i. All records, data and information, in whatever form, relevant to the commission of one or more of the above-described offenses, including, but not limited to:

         1. geolocation data relating to, or tending to show, the device's location;
         2. digital media in whatever form, including audio, video and audio/video files and recordings and all ExIF information and metadata appertaining thereto, including device information, geotagging information, and information of the relevant dates related to the media;
         3. incoming and outgoing voice messages, text messages, and/or multimedia messages;
         4. communications sent or received by whatever means, including via third-party applications and/or social media services;
         5. call logs;
         6. secondary phone number accounts, including those derived from TOR, Meet Up App, Skype, Google Maps, Google Voice, and other applications that can assign roaming phone numbers;
         7. internet-based communications in whatever form;
         8. media lists;
         9. internet browser histories;
         10. search engine histories;
         11. third-party application search histories;
         12. digital 'cookies';
         13. firewall logs;
         14. caches;
         15. 'bookmarked' or 'favorited' web pages;
         16. records of user-typed web addresses;
         17. account information and settings;
         18. saved usage information; and

  ii. Evidence of user attribution, including any records, data or information tending to show who possessed and/or used **SUBJECT DEVICE 1** at the time the things described in the preceding paragraph were created, edited, or deleted.

 b. As to **SUBJECT DEVICE 2**:

  i. All records, data and information, in whatever form, relevant to the commission of one or more of the above-described offenses, including, but not limited to:

   1. geolocation data relating to, or tending to show, the device's location;
   2. digital media in whatever form, including audio, video and audio/video files and recordings and all ExIF information and metadata appertaining thereto, including device information, geotagging information, and information of the relevant dates related to the media; and

  ii. Evidence of user attribution, including any records, data or information tending to show who possessed and/or used **SUBJECT DEVICE 2** at the time the things described in the preceding paragraph were created, edited, or deleted.

2. As used above, the terms "records", "data" and "information" include all of the foregoing items of evidence, in whatever form, and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.